UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

ANDY TONG,
Plaintiff,

v.                                    CASE NO.: 3:21-cv-1235-MMH-JBT

JEFFREY ALAN SIEGMEISTER,
AND
MARION MICHAEL O'STEEN,
Defendants.
_____/

**UNITED STATES OF AMERICA'S UNOPPOSED MOTION TO INTERVENE
AND TO TEMPORARILY STAY CIVIL PROCEEDINGS**

The United States of America (or the "government"), by Roger B. Handberg, United States Attorney for the Middle District of Florida, and by its undersigned attorneys, pursuant to Rule 24, FED. R. CIV. P., hereby respectfully moves to intervene in this civil action for the limited purpose of staying the instant proceeding until the conclusion of a pending federal prosecution involving Marion Michael O'Steen and Jeffrey Alan Siegmeister, defendants herein, and the same facts, evidence, witnesses, and circumstances at issue in the instant civil suit. Accordingly, the United States respectfully requests the Court to (1) adjust the *Case Management and Scheduling Order* ("Case Scheduling Order") entered on March 29, 2022 (Doc. 19), and (2) stay this civil proceeding for a period of ninety days, or provide other relief to the government as required

in the interests of justice. The Government seeks to intervene because it has a direct and substantial interest in the subject matter of this action which, in significant part, overlaps with an ongoing federal criminal case, now pending in the Middle District of Florida, Jacksonville Division, that is *United States v. Jeffrey Alan Siegmeister, et al.,* Case No. 3:21-cr-16-MMH-JBT. The government therefore seeks to intervene in this action and requests a limited stay of the civil proceedings, with any appropriate adjustments to the Court's Case Scheduling Order, to avoid prejudice or harm to the government's ongoing federal criminal case and the parties in this case as the conduct at issue in this civil action overlaps with a significant aspect of the ongoing federal criminal prosecution.

## I.    RELEVANT PROCEDURAL BACKGROUND

### A.    May 8, 2019 Search Warrants

On May 8, 2019, federal law enforcement agents executed federal search warrants to search cellular telephones used by Jeffrey Alan Siegmeister and Marion Michael O'Steen for evidence of violations of 18 U.S.C. § 1951, which prohibits the obstruction, delay, or affecting of commerce by extortion; 18 U.S.C. § 1952, which prohibits the use of any facility in interstate or foreign commerce with intent to otherwise promote, manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on of any unlawful activity, that is bribery, in violation of Florida Statute § 838.015, and

extortion, in violation of Florida Statute § 836.05, and thereafter the performance or attempt to promote, manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on of the unlawful activity; 18 U.S.C. § 666, which prohibits theft or bribery concerning programs receiving Federal funds; 18 U.S.C. §§ 1343 and 1346, which prohibits a scheme or artifice to defraud, including a scheme or artifice to deprive another of the intangible right to honest services by wire; and conspiracy to commit those offenses, in violation of 18 U.S.C. § 371. As of that date, the federal investigation primarily involved O'Steen's representation of a client in a state criminal case for keeping a gambling house in violation of Florida Statute, and the favorable disposition O'Steen promised to obtain for him from State Attorney Siegmeister in exchange for $75,000.

B.  Indictment, Guilty Plea, and Trial Date

On February 24, 2021, a federal grand jury returned a twelve count Indictment in the Middle District of Florida, Case No. 3:21-cr-16-MMH-JBT, which included, *inter alia,* charges against Siegmeister and O'Steen together in Count One, conspiracy to use a facility of commerce for unlawful activity, that is bribery and extortion in violation of Florida laws, from at least in or around November 2017, and continuing through on or about May 16, 2019, in violation of 18 U.S.C. §§ 1952(a)(3) and 371; Count Two, conspiracy to interfere with

3

commerce by extortion, from on or about August 9, 2018, through on or about May 16, 2019, in violation of 18 U.S.C. § 1951(a); and Count Three, interference with commerce by extortion and aiding and abetting the same, from at least as early as August 9, 2018, and continuing through on or about May 16, 2019, in violation of 18 U.S.C. §§ 1951(a)(1) and 2. The allegations in the Indictment are incorporated by reference here. Counts One, Two, and Three allege conspiracies and acts around the alleged corrupt relationship between O'Steen, a criminal defense attorney, and Siegmeister, then the elected State Attorney for the Third Judicial Circuit of Florida, through which (1) Siegmeister solicited and received bribes from O'Steen, and (2) the conspirators extorted or attempted to extort O'Steen's clients, to achieve more favorable dispositions of their criminal cases, to include the extortion of a client charged with keeping a gambling house in the Circuit Court for the Third Judicial Circuit, and the promise to "make everything go away" in exchange for $75,000.

On February 22, 2022, Siegmeister entered a guilty plea pursuant to a cooperation plea agreement to Counts One and Two of the Indictment, as well as Counts Seven and Ten, in which he was charged singularly with wire fraud and filing a false tax return, respectively.

O'Steen is set for trial on the pending criminal charges against him on June 6, 2022, before this Honorable Court.

    C.    <u>The Instant Civil Suit</u>

On December 16, 2021, the instant civil case was filed, alleging that Plaintiff Tong retained O'Steen as his criminal defense attorney, and that O'Steen and Siegmeister conspired to divest Tong of $60,000. The complaint further alleges that O'Steen requested official acts from Siegmeister as the State Attorney and that Siegmeister solicited, accepted, and agreed to accept a bribe in return for the official acts. The complaint continues to state that O'Steen told Tong he could make all of Tong's criminal charges "go away" for $75,000.

On March 7, 2022, O'Steen filed a notice of a related action, identifying the federal criminal case filed in the Middle District of Florida, *United States v. Siegmeister, et al.*, Case No. 3:21-cr-16-MMH-JBT, and the state criminal case filed in the Circuit Court of the Third Judicial Circuit of Florida in and for Columbia County, Florida, *State of Florida v. Andy Tong, et al.*, Case No. CO-2018-000046-CF, as related cases. Doc. 14. On March 28, 2022, counsel for Plaintiff Tong and counsel for Defendant O'Steen filed a Uniform Case Management Report, which requested certain deadlines be set, to include initial disclosures and discovery deadlines. Doc. 18. The parties' "Discovery Plan" advises that discovery may be needed on the following subjects:

    (1)    detailed factual investigation on the allegations of the Complaint;

    (2)    the underlying criminal case in the Circuit Court of the Third Judicial Circuit of Florida in and for Columbia County, Florida, Case Style *State of Florida v. Andy Tong, et al.*, Case No. CO-2018-000046-CF); and

    (3)    the related criminal case in the United States District Court Middle District of Florida Jacksonville Division, Case Style, *United States of America v. Jeffrey Alan Siegmeister, et al.*, Case No. 3:21-cr-16-MMH-JBT.

*Id.*

## II. MEMORANDUM IN SUPPORT

### A. Legal Standards Governing Requests for Intervention

Rule 24(a) of the Federal Rules of Civil Procedure provides that an applicant may intervene as of right in an action when that applicant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). Rule 24(b)(1)(B) alternatively provides for permissive intervention when a movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of those provisions.

Intervention As Of Right

In the Eleventh Circuit, an applicant may be entitled to intervention of right when:

(1) the application is timely;

(2) the applicant has an interest relating to the property or transaction which is the subject of the action;

(3) the applicant is so situated that a disposition of the action, as a practical matter, may impede its ability to protect that interest; and

(4) the applicant demonstrates that his interest is represented inadequately by the existing parties to the suit.

*Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989), *citing Athens Lumber Co., Inc. v. Federal Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982). In other words, a party is entitled to intervene as a matter of right "if the party's interest in the subject matter of the litigation is direct, substantial, and legally protectable." *Georgia v. United States Army Corps of Eng'rs.*, 302 F.3d 1242, 1249 (11th Cir. 2002) (hereinafter "*Corps of Eng'rs*").

In light of the parallel nature of the proceedings, the government is entitled to intervene as of right pursuant to Rule 24(a)(2). First, the government's motion is timely as it is filed just two weeks after the parties' case management report identifying the federal criminal case as a subject for which the parties seek discovery. Further, upon information and belief, no discovery has been exchanged to date.

The second *Chiles* factor is satisfied here, in that the government indisputably has a direct and substantial interest in the subject matter of this action, because the pending federal criminal case concerns, in significant part, the same transactions involved in this action. Thus, the government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

The third and fourth *Chiles* factors are also satisfied. Absent intervention, the government's ability to enforce the criminal laws implicated in this civil action will be adversely affected. The public interest in enforcement of the criminal laws cannot, and should not be expected to, be protected adequately by any party to this civil suit.

The Supreme Court has explicitly held that the 'inadequate representation' requirement of Rule 24(a) is satisfied if the [proposed intervenor] shows that representation of his interest 'may be inadequate' and that "burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10 (1972); *see Corps of Eng'rs*, 302 F.3d at 1255; *Chiles*, 865 F.2d at 1214. The United States here has certainly met that burden; no party to this action is properly situated or motivated to adequately represent the government's interests with respect to the enforcement of the

criminal statutes under consideration. *See SEC v. Downe*, 1993 WL 22126, *12 (S.D.N.Y. Jan. 26, 1993) ("even though the SEC is involved in this action, the United States Attorney may have an interest in this litigation which is qualitatively different from the SEC's interest"). Accordingly, the Court should grant the government's application pursuant to Rule 24(a)(2).

Permissive Intervention

Alternatively, the government's application readily satisfies the standard for permissive intervention under Rule 24(b)(2). That provision requires only that the government's claim and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties. Rule 24(b)(2). *Corps of Eng'rs*, 302 F.2d 1250, citing *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1365 (11th Cir. 1981).

As set forth above, a primary aspect of the pending federal criminal case is O'Steen and Siegmeister's conspiracy to commit bribery and extortion of criminal defendants. Thus, the ultimate determination of any person's guilt or innocence on federal criminal charges will turn on many of the same factual and legal issues presented in this civil action. Accordingly, intervention is appropriate under Rule 24(b)(2). *Downe*, 1993 WL 22126, *11 (granting permissive intervention where grand jury investigation and SEC enforcement

action involved common questions of law and fact); *First Merchants Enter., Inc. v. Shannon*, 1989 WL 25214, *2 (S.D.N.Y. Mar. 16, 1989) (granting permissive intervention in private securities fraud action).

District courts have allowed the government to intervene in civil actions, especially for the limited purpose of moving to stay discovery of a civil proceeding. *See, e.g. United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *Twenty First Century Corp. v. LaBianca*, 801 F.Supp. 1007, 1009 (E.D.N.Y. 1992). Accordingly, intervention by the Government is appropriate here.

### B. The Court Has the Authority to and Should Stay the Civil Proceeding Pending the Resolution of the Criminal Case.

This Court has the inherent power to stay the proceedings in this case in the interests of justice. *Landis v. North American Co.,* 299 U.S. 248, 254-55 (1936). Courts routinely stay parallel civil proceedings in order to protect a pending criminal investigation or prosecution. *See e.g., Campbell v. Eastland,* 307 F.2d 478, 487-490 (5th Cir. 1962) (Wisdom, J.).[1] The need for a stay of parallel civil proceedings arises from the fundamental differences between civil and criminal proceedings and the compelling public interest in facilitating enforcement of the criminal laws. As explained in *Campbell*, 307 F.2d at 487:

---

[1] In *Bonner v. City of Pritchard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

> There is a clearcut distinction between private interests in civil litigation and the public interest in a criminal prosecution, between a civil trial and a criminal trial, and between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure. [B]ut these distinctions do not mean that a civil action and a criminal action involving the same parties and some of the same issues are so unrelated that in determining good cause for discovery in the civil suit, a determination that requires the weighing of effects, the trial judge in the civil proceeding should ignore the effect discovery would have on a criminal proceeding that is pending or just about to be brought. The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

The Fifth Circuit advised that courts considering motions to stay civil proceedings and for protective orders pending dispositions of related criminal cases need to be sensitive to the differences of the policies and objectives of the "well-stocked battery of discovery procedures" of the Federal Rules of Civil Procedure and the "far more restrictive" rules governing criminal procedure. *Id.* Otherwise, defendants in a criminal proceeding may be able to receive information through the civil discovery period to which they would not have been privy under the most stringent criminal discovery rules. *Id.* at n.12. It is this concern that courts have repeatedly stressed present serious danger in permitting parallel cases. *Id.* at 487; s*ee also In re Ivan F. Boesky Securities Litig.,*

128 F.R.D. 47, 49 (S.D.N.Y. 1989) ("the *public interest* in the criminal case is entitled to precedence over the civil litigant") (emphasis in original).

In addition to the advantage a civil party obtains via the liberal civil discovery rules, there are other policy reasons that counsel in favor of staying a civil action during the pendency of a criminal case. For example, permitting a civil case to proceed during an ongoing criminal investigation may cause injury to some of the civil parties because, while the civil discovery rules permit liberal discovery, the civil party who is also a criminal defendant may assert a Fifth Amendment privilege to any reciprocal discovery request in light of the pending criminal matter. *See*, *e.g., Southeast Recovery Group,* 278 F.R.D. 162, 168 (E.D. La. 2012) (noting Fifth Amendment concerns in parallel proceedings); *Dominguez v. Hartford Financial Services Group, Inc.*, 530 F.Supp.2d 902, 906 (S.D. Tex. 2008) (discussing that civil defendant may be prejudiced by permitting a civil case to proceed during the pendency of an ongoing criminal investigation). Further, permitting a civil suit to proceed during an ongoing criminal investigation would establish a dangerous precedent for future criminal defendants or subjects to file civil suits in order to avoid limitations imposed by criminal rules, including discovery rules. *Id.* at 908.

In evaluating applications by the government to stay civil proceedings, courts often balance the competing interests implicated on a case-by-case basis

12

in attempt to prevent one action from doing harm to the other. *See, e.g., Campbell*, 307 F.2d at 487-90 (judicial discretion and procedural flexibility should be utilized to harmonize conflicting rules and prevent one suit from doing violence to the other). In *U.S. v. Lot 5, Fox Grove, Alachua County, Fla.*, 23 F.3d 359, 364 (11th Cir. 1994) (hereinafter "*Lot 5*"), the Eleventh Circuit, while not addressing the *Campbell* considerations, determined that a district court "must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interests of justice.'"

Regardless of whether the analysis is conducted under *Campbell* or *Lot 5*, or both, the use of civil discovery to investigate the criminal investigation, the resulting inequities to the government caused by asymmetrical discovery, the premature disclosures to the defendants and others of potential government witnesses and information, and the impact of civil discovery on the integrity of the criminal investigation, create special circumstances requiring, in the interests of justice, the relief requested by the government.

The key threshold issue in deciding whether a court should stay a civil proceeding is the degree to which the issues in the civil and criminal proceedings overlap. *See S.E.C. v. Healthsouth Corp.,* 261 F.Supp.2d 1298, 1326 (N.D. Ala. 2003); *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.,* 7 F.Supp.2d 523, 527 (D.N.J. 1998). In addition to whether the issues overlap, courts also consider other

13

factors such as prejudice to the government's interest in connection with ongoing criminal investigations or prosecutions; the extent to which a defendant's Fifth Amendment rights are implicated; the interest of the plaintiff in proceeding expeditiously with the litigation and the potential prejudice to the plaintiff from delay; whether the defendants have been indicted; the burden any particular aspect of the proceedings may impose on the defendant; the interests of the courts; and the public interests. *See, e.g., Campbell*, 307 F.2d at 490; *Healthsouth Corp.*, 261 F.Supp.2d at 1326; *Walsh Sec.*, 7 F.Supp.2d at 526-27 ("The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned," quoting Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (1990)); *Trustees of Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).

As set forth above, the facts of the criminal case are nearly identical to the facts in the instant civil case. Both matters involve O'Steen and Siegmeister conspiring to extort an individual for an exorbitant fee for resolution of his pending criminal case and conspiring to commit bribery. Thus, it is clear the parties, with the exception of the United States, witnesses, evidence, and operative events will be the same in the two parallel proceedings. This fact counsels strongly in favor of a stay.

With respect to the factor addressing prejudice to the government's criminal investigation or proceeding, the principal concern articulated by the courts is the danger that criminal defendants, or potential defendants, may abuse the mechanisms of civil discovery to circumvent the limitations on discovery in criminal prosecutions. Courts have repeatedly emphasized that such abuse of the civil discovery process should not be permitted. For example, as explained in *Campbell*,

> A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit.

*Campbell*, 307 F.2d at 487. The Federal Rules of Civil Procedure authorize broad discovery of both parties and nonparties. *See, e.g.*, Rule 26(b), FED. R. CIV. P. ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…"). Conversely, criminal defendants often seek to stay parallel civil proceedings, arguing that they face the "dilemma either of having to testify in a pre-trial deposition or, by invoking the privilege against self-incrimination, subjecting [themselves] to a permissible adverse inference in the civil case." *SEC v. Oakford Corp.*, 181 F.R.D. 269, 270 (S.D.N.Y. 1998). Unlike the broad reaches of civil discovery, the narrow scope of federal criminal discovery is based on

concerns that broad disclosure of the details of the prosecution's case will result, *inter alia*, in perjury and manufactured evidence; and that revelation of the identity of prospective government witnesses will create opportunities for harassment or intimation of those witnesses.

In the instant case, the parties do not oppose the stay and thus do not suffer prejudice based on a delay of the civil proceedings. In any event, the requested stay is temporary and for a period of just 90 days to provide for conclusion of the criminal case, which is set for trial to begin on June 6, 2022. As set forth above, the named defendants in the instant case also stand to benefit from the Government's request for a stay of the instant civil case. Permitting the criminal case to resolve first permits the defendants an opportunity to properly address any criminal culpability prior to any civil liability. Should a stay of the civil proceedings *not* be granted, one or both of the defendants could be prejudiced in their ability to prepare a defense or assert a counterclaim due to the potential invocation of the Fifth Amendment.

Lastly, both the public's and this Court's interests counsel in favor of a stay. The courts' and the general public's interests are served when criminal proceedings can proceed unspoiled by a criminal defendant's attempts to use civil litigation as an offensive mechanism to seek discovery that would otherwise be limited in the criminal proceeding. *Campbell*, 307 F.3d at 490. As

a general matter, the role of the United States as prosecutor of federal crimes is designed to serve not only the private victims of crimes, but also the general public. In that sense, it can be fairly stated that "the public interest in [a] criminal case is entitled to precedence over…civil litigation." *In re Ivan F. Boesky Sec. Litigation*, 128 F.R.D. 47, 49 (S.D.N.Y. 1989) (alteration not in original); *see Campbell*, 307 F.2d at 487 ("administrative policy gives priority to the public interest in law enforcement"). Here, because the public interest lies with law enforcement (rather than the prosecution of a private civil claim), this factor counsels in favor of a stay.

Additionally, interests of judicial economy counsel in favor of a stay of civil proceedings pending the outcome of the ongoing criminal case. Permitting the criminal matter to proceed may streamline this civil litigation, since there will be no need to make rulings on evidentiary or discovery issues in the civil case which may be disposed of by the criminal matter.

### III. LOCAL RULE 3.01(g) CERTIFICATION

Per Rule 3.01(g), Rules of the U.S. District Court for the Middle District of Florida, the government has discussed the substance of this motion with Kelly B. Mathis, Esq., counsel for plaintiff Andy Tong, who has advised that plaintiff does not oppose the motion and the stay of civil proceedings as requested by the government.

The United States has also conferred with Kirsten D. Blum, Esq., counsel for O'Steen in the instant case, who has advised that defendant O'Steen does not agree with, concede, admit, or otherwise stipulate to any of the factual allegations contained in the Motion to Stay, but that he has no opposition to the relief the Government is requesting in the Motion to Stay.

As of the date of this filing, service of defendant Jeffrey Alan Siegmeister had not been perfected in the instant case.

## **CONCLUSION**

For the forgoing reasons, the government respectfully requests that this Court grant this motion to intervene and stay this civil proceeding for a period of ninety days, adjust the Case Scheduling Order as appropriate, or provide other relief to the government as required in the interests of justice.

                                          ROGER B. HANDBERG
                                          United States Attorney

By:   *s/ Kelly S. Karase*
        Kelly S. Karase
        Assistant United States Attorney
        Florida Bar No. 1031977

        *s/ David B. Mesrobian*
        David B. Mesrobian
        Assistant United States Attorney
        USAO No. 188
        300 North Hogan Street, Ste. 700
        Jacksonville, Florida  32202-4270
        Telephone:   (904) 301-6300
        Facsimile:    (904) 301-6310
        E-mail:  kelly.karase@usdoj.gov
                david.mesrobian@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Kelly B. Mathis, Esq.
*Counsel for Plaintiff Andy Tong*

Charles J. Meltz, Esq.
Kirsten D. Blum, Esq.
*Counsel for Defendant Marion Michael O'Steen*

                                                  *s/ Kelly S. Karase*
                                                  KELLY S. KARASE
                                                  Assistant United States Attorney