UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANDY TONG,

       Plaintiff,

v.                              CASE NO. 3:21-cv-1235-MMH-JBT

JEFFREY ALAN SIEGMEISTER,
etc.,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the undersigned on Plaintiff's Amended Motion for Default Judgment Against Jeffrey Alan Siegmeister ("Motion") (Doc. 60).[1]  The undersigned held an evidentiary hearing regarding the damages request in the Motion on November 7, 2023.[2]  (*See* Doc. 67.)  For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Motion be **GRANTED** and that a final default judgment be entered in favor of Plaintiff and against Defendant in

---

[1] In connection with the Motion, Plaintiff also filed a request for judicial notice of Defendant's criminal case.  (Doc. 59.)  The undersigned recommends that it is unnecessary for the Court to take judicial notice of that case.

[2] At the hearing, Plaintiff's attorney agreed that a judgment should not be entered against Defendant in his official capacity, and he withdrew any such request.

the total amount of $235,869.00, with post-judgment interest to accrue at the statutory rate set forth in 28 U.S.C. § 1961.[3]

## I.      Background

Plaintiff seeks a default judgment as to both liability and damages on the following causes of action: Count I, 42 U.S.C. § 1983 – 8th and 14th Amendments; and Count II, 42 U.S.C. § 1983 – Conspiracy Claim.  (*See* Doc. 60; Doc. 22 at 8–17.)  Default was entered against Defendant on January 6, 2023 (Doc. 47).  The undersigned previously denied Plaintiff's initial motion for default judgment without prejudice and ordered Plaintiff to file a new motion setting forth in greater detail how the requirements for obtaining a default judgment had been met.  (*See* Doc. 58.)  Plaintiff has now sufficiently addressed the identified deficiencies.  (*See* Docs. 60, 61.)[4]

## II.      Standard

Before the Court enters a default judgment in a case, a number of requirements must be met.  A plaintiff must show, by affidavit or otherwise, defendant's failure to plead or otherwise defend a lawsuit, and a default must have

---

[3] This amount represents all of Plaintiff's requested damages except for $6,500.00 in moving expenses.  (*See* Doc. 61 at 3.)  Given that Plaintiff's relocation from Florida to California occurred in or about October 2022, which is significantly later than the event allegedly triggering Plaintiff's need for the relocation (Plaintiff's brother being shot), which was in or about April 2020, it does not appear that the moving expenses are sufficiently related to the conduct at issue.  (*See* Docs. 66, 67 at 23–30.)  Therefore, the undersigned recommends that the moving expenses be excluded from the damages awarded to Plaintiff.

[4] Such deficiencies included a lack of proof that Defendant was not incompetent or in the military, and an insufficient memorandum of law.  (*See* Doc. 57.)

been entered.  Fed. R. Civ. P. 55(a).  After entry of the default, the plaintiff must apply to the Court for a default judgment, except in limited circumstances when application may be made to the clerk.  Fed. R. Civ. P. 55(b).  The Court must ensure that it has subject matter jurisdiction over the claims and that the well-pled factual allegations of the complaint, which are deemed admitted upon entry of default, adequately state a claim for which relief may be granted.[5]  *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1205–06 (5th Cir. 1975).

Federal Rule of Civil Procedure 8 requires that a complaint contain "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought."  Fed. R. Civ. P. 8(a)(1)-(3).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Thus, in ruling on a motion for final default judgment, the

---

[5] If the relief sought includes a sum of damages that is "not liquidated or capable of mathematical calculation," the Court must conduct an evidentiary hearing. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *SEC v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005).

Court must determine whether a sufficient factual basis exists in the complaint for a judgment to be entered.  *See Nishimatsu Constr. Co.*, 515 F.2d at 1206.

### III.    Claims Stated[6]

#### A.    Violation of Civil Rights Pursuant to 42 U.S.C. § 1983– Eighth and Fourteenth Amendments

To state a claim under Section 1983, Plaintiff must allege that "the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).  The deprivation of rights "must be caused by . . . a person for whom the State is responsible [and] the party . . . must be a person who may fairly be said to be a state actor."  *Id.*  (internal quotation marks and citations omitted). First, the undersigned recommends that Plaintiff has plausibly alleged that the conduct complained of was committed by a state actor, i.e., the State Attorney for the Third Judicial Circuit of Florida.    State action is apparent in this case. (*See generally* Doc. 22.)

Second, Plaintiff plausibly alleges that Defendant deprived him of two constitutional rights.   The first is Plaintiff's Sixth Amendment right, as a non-

---

[6] The Court previously noted in a docket entry dated December 17, 2021, that it was satisfied of the existence of subject matter jurisdiction.

indigent criminal defendant, to counsel of choice.[7]  The Supreme Court has stated that "[t]he right to select counsel of one's choice . . . has been regarded as the root meaning of the [Sixth Amendment's] constitutional guarantee."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006).  Indeed, the Sixth Amendment guarantees a defendant the fundamental right to be represented by a qualified attorney that he can afford to hire.  *Luis v. United States*, 578 U.S. 5, 12 (2016).  "Deprivation of the right is 'complete' when [a non-indigent] defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received."  *Gonzalez-Lopez*, 548 U.S. at 148.

Regarding this Sixth Amendment deprivation, Plaintiff alleges the following:

> 10. On or about February 7, 2018, Plaintiff Tong retained a private defense attorney with substantial experience relating to the precise charges against him to defend him against the criminal charges.
>
> 11. After Plaintiff Tong hired the defense attorney, Defendant Siegmeister threatened Plaintiff Tong by stating that, if Plaintiff Tong continued to retain that attorney as his criminal defense attorney, Defendant Siegmeister would "throw the whole book" at Plaintiff Tong, meaning Defendant Siegmeister planned to punish Plaintiff Tong as severely as possible based on Plaintiff Tong's choice of defense attorney.
>
> 12. Instead, Siegmeister told Tong that he needed to hire a local attorney so that something could be worked out.

---

[7] The Sixth Amendment right to counsel is incorporated as applicable to the states through the Fourteenth Amendment.  *See Gideon v. Wainwright*, 372 U.S. 335, 343 (1963).

13. Based on Siegmeister's threats, Tong fired the first attorney and forfeited a portion of the initial retainer paid to the first attorney.

14. On or about February 26, 2018, after Plaintiff Tong had fired his first defense attorney, Plaintiff Tong retained Defendant O'Steen as his criminal defense attorney for the gambling charge.[8]

. . .

45. Defendant Siegmeister threatened Tong with punishing him as severely as possible if he did not switch defense attorneys in violation of his due process rights under the 14th Amendment.

46. Defendant Siegmeister unlawfully deprived Tong of his property without due process of law in violation of the 14th Amendment of the United States Constitution.

(Doc. 22 at 3, 9.)  Based on these allegations, Plaintiff has plausibly alleged that Defendant "prevented him from being represented by the lawyer he want[ed]," thereby depriving him of his Sixth Amendment right to counsel of his choice. *Gonzalez-Lopez*, 548 U.S. at 148.

The second constitutional right at issue is the Eighth Amendment prohibition on the imposition of "excessive fines."  U.S. Const. amend. VIII.   As the Supreme Court has stated, the Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (emphasis in original) (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257,

---

[8] O'Steen was previously dismissed as a defendant in this case. (*See* Docs. 51, 53.)

265 (1989)).  The Eighth Amendment's Excessive Fines Clause is incorporated as applicable to the states through the Due Process Clause of the Fourteenth Amendment.  *See Timbs v. Indiana*, 139 S. Ct. 682, 686 (2019).

As applicable to this case, the Supreme Court has held that "civil *in rem* forfeitures fall within the [Excessive Fines] Clause's protection when they are at least partially punitive."  *Id*. at 689 (citing *Austin*, 509 U.S. 602).  Moreover, the Eleventh Circuit has held that, in a federal sentencing context, "'[a] forfeiture far in excess of the statutory fine range … is likely to violate the Excessive Fine Clause.'" *United States v. Chaplin's, Inc.*, 646 F.3d 846, 852 (11th Cir. 2011).

The undersigned recommends that Plaintiff has plausibly alleged that the forfeiture imposed upon him by the State of Florida because of Defendant's actions violated the Excessive Fines Clause.[9]  In the Amended Complaint, Plaintiff alleges in relevant part:

> 33. Defendants O'Steen and Siegmeister further took advantage of Plaintiff Tong and induced Tong to forfeit his rights to all of the cash and property seized from Plaintiff Tong's game room in connection with his arrest. Forfeiture of the cash and property was a further condition of what Plaintiff Tong needed to do to "make [the charges] go away."
>
> 34. The property forfeited includes, but is not limited to: a. Computers, software, hardware, game machines; b. Ledger books;  c. A significant, but still unknown, amount of U.S. Currency; d. Multiple cell phones;  e. Firearm, ammunition;  f. Bill counter; g. Money bag; h. Receipts.

---

[9] The undersigned is not expressing any opinion on the ultimate merits of this claim, or whether it would even survive summary judgment.  The undersigned is recommending only that a plausible claim has been stated.

35. The maximum fine that could have been imposed on Plaintiff Tong if he was convicted of maintaining a gambling house is $5,000. The aforementioned property has a value of approximately $23,528.00, making the forfeiture almost five times the maximum fine amount, without including the undetermined amount of cash.

. . .

51. Defendant Siegmeister was acting under color of state law when he arranged for the forfeiture of Tong's personal property and any future rights to that property without due process of law in violation of the excessive fines clause of the 8th Amendment of the United States Constitution and the due process clause of the 14th Amendment of the United States Constitution.

52. The forfeiture of Plaintiff Tong's property is grossly disproportionate to the gravity of Plaintiff Tong's offense.

(Doc. 22 at 7–8, 10.)

Based on the above allegations, Plaintiff has plausibly alleged that Defendant violated his Eighth Amendment rights. Thus, the undersigned recommends that Plaintiff has stated a claim against Defendant under Section 1983.

## B.    Civil Conspiracy Under 42 U.S.C. § 1983

The undersigned recommends that Plaintiff has stated a claim for civil conspiracy pursuant to Section 1983.

To prevail on a § 1983 conspiracy claim a plaintiff must show that an agreement between two or more people (at least one of whom is a state actor) to violate his constitutional rights resulted in an actual violation of those rights. The existence of such a conspiracy may be proved by circumstantial evidence.

*Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1191 (11th Cir. 2011) (internal citations omitted).  As the Eleventh Circuit stated in *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010): "The plaintiff attempting to prove such a conspiracy must show that the parties reached an understanding to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy."  *See also Bailey v. Bd. of Cty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1122 (11th Cir.1992) ("[T]he linchpin for conspiracy is agreement.").

As discussed above, the undersigned recommends that Plaintiff has plausibly alleged the violation of underlying constitutional rights.  The undersigned further recommends that Plaintiff has also plausibly alleged that Defendant (as the lone state actor) reached an agreement with Plaintiff's former defense attorney, Marion Michael O'Steen, to deprive Plaintiff of his rights.  Plaintiff alleges that, based on Defendant's previously stated threats, Plaintiff fired his first attorney and instead retained O'Steen.  (Doc. 22 at 3.)  Defendant and O'Steen then conspired to divest Plaintiff of his money and rights by engaging in the following:

> 16. It was part of the conspiracy that Defendant O'Steen would and did request official acts from Defendant Siegmeister in his official capacity as the State Attorney to include favorable disposition of charges filed against Plaintiff Tong, who Defendant O'Steen represented.
>
> 17. It was further part of the conspiracy that Defendant Siegmeister would and did use his position as State Attorney to solicit, accept, and agree to accept a bribe in return for the favorable disposition of Plaintiff Tong's criminal case.

> 18. As part of the conspiracy, Defendant O'Steen would use the money garnered from Plaintiff Tong to buy a bull from Defendant Siegmeister as part of Defendant Siegmeister's payment for his role in the conspiracy.

(*Id.* at 4.)

Plaintiff further alleges that Defendant and O'Steen had an agreement when O'Steen told Plaintiff that the price for a "favor" to make his case "go away" was $60,000.00 and that Defendant was helping O'Steen make this happen. (*Id.* at 5.) Further, Plaintiff paid O'Steen the money, which O'Steen then used in part to buy a bull from Defendant. (*Id.* at 6–7.) It is reasonable to infer from such allegations that Defendant and O'Steen had an agreement to deprive Plaintiff of his constitutional rights to choose his own counsel and to be free from excessive fines. Therefore, the undersigned recommends that Plaintiff has stated a plausible claim for civil conspiracy pursuant to 42 U.S.C. § 1983.

## IV.   Damages

Regarding damages, "a judgment by default may not be entered without a hearing [on damages] unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam); *see also SEC v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). Further, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also Campbell v. Bennett*, 47 F.4th 1362 (11th Cir. 2022).

Although Plaintiff provided an affidavit regarding his economic damages, he also seeks damages for emotional distress. (*See* Doc. 61.) Thus, the undersigned held an evidentiary hearing on November 7, 2023. (*See* Doc. 67.) There, Plaintiff provided evidence in the form of his own testimony, in addition to his affidavit, of the following damage amounts, including the value of business property forfeited or damaged:[10]

| Item | Amount |
|------|--------|
| 1.  Cash seized from game room | $100,000 |
| 2.  Safes (2) | $1,195 |
| 3.  Dell computers (3) | $2,865 |
| 4.  Digital video recorder (DVR) | $1,600 |
| 5.  Currency counter | $1,000 |
| 6.  Fish tables (24) | $151,200 |
| 7.  Amusement games (30) | $36,000 |
| 8.  Excess attorney's fees paid to O'Steen | $5,000 |
| 9.  Lost income from game room (25% of net profits) | $50,000[11] |

---

[10] Items 1 through 7 above are damages to Plaintiff's business, of which he was a 25% owner; therefore, he is entitled to only 25% of the amounts shown.

[11] This was Plaintiff's estimate based on his knowledge of his business, past performance, and the likelihood that, but for Defendant's actions, the business would have continued for several more years until a new Florida gambling law was passed. (*See* Doc. 67 at 22, 31.)

| | |
|---|---|
| 10. Felony administrative costs | $500 |
| 11. Court costs | $1,254 |
| 12. Columbia County Clerk fee | $150 |
| 13. Investigative fees | $5,000 |
| 14. Crime Stoppers of Suwannee County and Catholic Charities | $500 |
| 15. Emotional distress damages | $100,000[12] |

The total damages to Plaintiff's business is $293,860.  Twenty-five percent of that is $73,465.  The total damages to Plaintiff personally (items 8 through 15 above) is $162,404. The sum of Plaintiff's personal damages and his share of the business damages is $235,869.  The undersigned recommends that this figure represents a reasonable amount of damages incurred by Plaintiff as the result of Defendant's alleged conduct.  Further, these damages do no not differ in kind from, or exceed in amount, what is demanded in the pleadings.  (*See* Doc. 22 at 11, 16–17.)  Therefore, the undersigned recommends that the Court enter judgment in favor of Plaintiff in the total amount of $235,869.00.

## V.    Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

---

[12] This was the amount suggested by Plaintiff's attorney.  (*See* Doc. 67 at 32.)  It appears reasonable in the circumstances given the forced shutdown of Plaintiff's business, his fear of retribution in cooperating with the Federal Bureau of Investigation, and his victimization by the justice system through the corrupt actions of Defendant and O'Steen.  (*Id.* at 14, 23–29.)

1.      The Motion (**Doc. 60**) be **GRANTED**.

2.      The Clerk of Court be directed to enter judgment in favor of Plaintiff, Andy Tong, and against Defendant, Jeffrey Alan Siegmeister, in the amount of $235,869.00.  Post-judgment interest will accrue at the statutory rate set forth in 28 U.S.C. § 1961.

### **Notice To Parties**

"Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**DONE AND ENTERED** in Jacksonville, Florida, on November 17, 2023.


JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record